No. 12-1642

IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

BOWMAN COAL CO. INC. and
AMERICAN BUSINESS & MERCANTILE REASSURANCE CO.,

*Petitioners,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

and

CASBY BOWMAN,

*Respondents.*

ON PETITION FOR REVIEW OF DECISIONS
AND ORDERS OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

## PETITIONERS' REPLY BRIEF

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2361

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................................... i

I.      INTRODUCTION ............................................ 1

II.     ARGUMENT IN REPLY ..................................... 3

     A.    A Prior Fee Award that Is Not Based on a Market Analysis Is Not Competent to Establish a Prevailing Market Rate .................................................. 3

       B.    It Is Error to Compensate Anyone for Fifteen Minutes When the Work Performed Did Not Take Fifteen Minutes................................... 10

VIII.  CONCLUSION......................................................... 12

ADDENDUM

     CERTIFICATION OF COMPLIANCE

i

TABLE OF AUTHORITIES

Page

Cases:

*Amax Coal Co. v. Director, OWCP* [*Chubb*],
    312 F.3d 882 (7th Cir. 2002) ....................................................... 7,8

*A.R. ex rel. R.V. v. New York City Dep't of Educ.*,
    407 F.3d 65 (2d Cir. 2005) ........................................................ 7

*B&G Min. Co. v. Director, OWCP* [*Bentley*],
    522 F.3d 657 (6th Cir. 2008) ............................................. 4,6,7,9

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................... 3,4

*Bogan v. City of Boston*,
    489 F.3d 417 (1st Cir. 2007) ...................................................... 10

*City of Burlington v. Dague*,
    505 U.S. 557 (1992)..................................................................... 2,3,9

*Conoco , Inc. v. Director,* OWCP,
    194 F.3d 684 (5th Cir. 1999) ...................................................... 11

*Dep't of Labor v. Triplett*,
    494 U.S. 715 (1990)................................................................... 7

*Eastern Associated Coal Corp. v. Gosnell*,
    Case No. 11-2038 (L) and 11-2308 (4th Cir. docketed Sept. 26, 2011) .... 7

*Equal Employment Opportunity Comm'n v. N. Am. Land Corp.*,
    No. 08-501 (W.D.N.C. July 7, 2010) ........................................... 5

*Frye v. Metropolitan Life Ins. Co.*,
    No. 10-0107 (S.D.W.V. Feb. 4, 2011) ........................................ 5

*Ingalls Shipbldg., Inc. v. Director, OWCP* [*Biggs*],
    No. 95-40066, 46 F.3d 66 (5th Cir. Jun. 12, 1995) ........................ 11

*Ingalls Shipbldg., Inc. v. Director, OWCP* [*Fairley*],
    No. 89-4459 (5th Cir. July 25, 1990) ........................................... 11

*Lane Hollow Coal Co. v. Director, OWCP*,
    137 F.3d 799 (4th Cir. 1998) .......................................................... 9

*Marks Constr. Co. v. Huntington Nat'l Bank*,
    2010 U.S. Dist. LEXIS 89186 (N.D. W. Va. Aug. 27, 2010) ................... 5

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) .................................................................. 4,10

*Nat'l Mining Ass'n v. Dep't of Labor*,
    292 F.3d 849 (D. C. Cir. 2002) ...................................................... 9

*Newport News Shipbldg. and Dry Dock v. Brown*,
    376 F.3d 245 (4th Cir. 2004) ....................................................... 5,6

*Newport News Shipbldg. and Dry Dock v. Holiday*,
    591 F.3d 219 (4th Cir. 2009) ....................................................... 4,5

*Norman v. Housing Auth. of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) ....................................................... 7

*North Am. Coal Co. v. Miller*,
    870 F.2d 948 (3d Cir. 1989) .......................................................... 9

*Peabody Coal Co. v. Estate of Goodloe*,
    299 F.3d 666 (7th Cir. 2002) ....................................................... 7,8

*Peabody Coal Co. v. McCandless*,
    255 F.3d 465 (7th Cir. 2001) .......................................................... 8

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*,
    90 F.3d 1307 (7th Cir. 1996) ...................................................... 7,8

*Perdue v. Kenny A.*,
    130 S.Ct. 1662 (2010) .................................................................. 4

*Rum Creek Coal Sales, Inc. v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) ................................................... 5

*Spegon v. Catholic Bishop of Chicago*,
   175 F.3d 544 (7th Cir. 1999) ................................................. 7,8

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ................................................ 8

*Valazquez v. Director, OWCP*,
   844 F.2d 738 (10th Cir. 1988) ............................................... 7

*Westmoreland Coal Co. v. Cox*,
   602 F.3d 276 (4th Cir. 2010) ............................................... 4,5,9


Statutes and Regulations:

Federal Arbitration Act
   9 U.S.C. § 10 ..................................................................... 6

Black Lung Benefits Act, as amended, 30 U.S.C.
   §§ 901-945
   Section 422(a), 30 U.S.C. § 932(a).......................................... 1,8

Longshore Act, as amended, 33 U.S.C. §§ 901-950 (1993)
   Section 23(a), 33 U.S.C. § 923(a) .......................................... 9
   Section 28(a), 33 U.S.C. § 928(a)........................................... 1

Black Lung Program Regulations
   20 C.F.R. § 725.366(b)........................................................ 9

Miscellaneous:

Breger, Compensation Formulas for Court Awarded Attorney
   Fees, 47 LAW AND CONTEMPORARY PROBLEMS 249 (1984) ...................... 7

# I.    INTRODUCTION

This case involves an award of shifted fees under the Black Lung Benefits Act which incorporates the fee-shifting provisions of the Longshore Act, 33 U.S.C. § 928(a), *incorporated by reference into* 30 U.S.C. § 932(a).  Although it is a typical fee-shifting provision that allows a reasonable fee for necessary work to a prevailing claimant, the decision below, and many others decided by the agency, is not typical.  In this proceeding, the administrative law judge made no effort to determine the prevailing market rate for attorneys in the geographic area where claimant's counsel practices.  The administrative law judge refused to allow market rate evidence into the record by denying any discovery on the issue. Instead, the administrative law judge relied on prior fee awards without any inquiry into whether those fee awards were based on a market analysis.  The ALJ did not address the discrepancies between those non-market rate fee awards and others that were actually included in the record and that reflected lower hourly rates.  And, the ALJ refused to determine whether the use of quarter-hour billing increments unreasonably inflated the number of hours billed by the attorneys.  Bowman Coal Company and its carrier thus filed this appeal because the fee award was not based on market rates and did not follow the consistent and repeated teachings of the Supreme Court.

Claimant's counsel argues that determinations of a reasonable hourly rate for black lung litigation are somehow different from all of the determinations that judges must make under the 170 or so federal fee-shifting statutes.  According to the claimant, judges must be permitted to consider "the complex medical and legal issues which are found in Federal black lung litigation."  Response Brief of Appellee at 16.  This is so, even though the claimant recognizes that the novelty and complexity of a case is reflected not in the hourly rates, but in the number of hours recorded.  *Id.* at 29.  According to the claimant, an administrative law judge

has discretion to rely on prior fee awards even though those awards are not based on the market analysis required under the lodestar method because claimants' lawyers are not permitted to accept fees or other consideration from claimants. Response Brief at 18. And, according to the claimant, the ALJ has discretion to reject any contrary evidence in the record and to reject any discovery into the prevailing market rate. Thus, according to claimant, an ALJ has discretion to be arbitrary and to ignore the law when it comes to determining a reasonably hourly rate in black lung claims. Claimant cites no authority for this proposition and there is none. Claimant simply wants this Court to make new fee-shifting rules for black lung adjudications.

The Supreme Court has rejected the approach advocated by Mr. Bowman because it is circular. Where prior fee awards are not based on a market analysis, they are no better than pulling a number out of a hat. And, a judge's reliance on a prior fee award as somehow establishing the market is impermissible. As the Supreme Court recognized. looking to the artificial market created by Congress by fee-shifting "is obviously circular." … "Our decrees would follow the "market," which in turn is based on our decrees." *City of Burlington v. Dague*, 505 U.S. 557, 564 (1992). Where, as here, the claimant bears the burden of proof, but fails to submit the prior fee awards he relies on to support the hourly rates requested, and fails to show that those awards are based on a market rate analysis, the prior awards fail to establish a proper hourly rate as a matter of law. Reliance on prior awards therefore not only reflects an abuse of discretion, it is impermissible under the Supreme Court's fee-shifting jurisprudence.

Finally, the claimant defends the use of quarter-hour increments even though virtually every court including this one has condemned the practice. He argues instead that Bowman Coal's objection to the number of hours billed is "sparse" or "fragile." Response Brief at 26, 30. He claims that the courts have not rejected the

use of quarter-hour increments; instead, they have reduced the number of hours. Here, though, he claims that the case was complex so Bowman Coal should not be heard to complain that the hours were excessive.

Mostly, claimant's argument ignores the specific objections raised on appeal. In the end, Bowman gives no reason why the rules that apply to black lung claims should differ from the rules that apply under all other federal fee-shifting statutes, or why the Supreme Court's comprehensive jurisprudence on fee-shifting does not reach to the black lung program. He gives no reason why a bill for attorney's fees that is subject to fee-shifting statutes should be treated any differently than a bill sent to a fee-paying client. Fee-paying clients now require billing in tenth of an hour increments so they are not charged for time not spent. And, fee-paying clients now require discounts from their lawyers' "usual hourly rates." No client permits rounding up to the nearest quarter hour for a task that takes one minute or even five minutes. The same discipline that is required in the marketplace should be required in this case. That did not occur here.

## II.  ARGUMENT IN REPLY

A.    A Prior Fee Award that Is Not Based on a Market Analysis Is Not Competent to Establish a Prevailing Market Rate

There are approximately 170 federal fee-shifting statutes and virtually all of them impose identical criteria on the adjudicator with authority to award a fee. *See City of Burlington v. Dague*, 505 U.S. at 562. The centerpiece of all of them is the lodestar calculation, requiring a determination of "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This lodestar approach is intended to compensate prevailing counsel in a manner that "roughly approximates the fee the lawyer would be paid by a fee-paying client who billed by the hour in a comparable case litigated in the market in which the attorneys practice.

*See Perdue v. Kenny A.*, 559 U.S. __, 130 S.Ct. 1662 (2010). The lodestar calculation imposes an "objective" measure, and "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 1672.

Claimant's counsel does not dispute that the lodestar method must be applied to determine a "reasonable" hourly rate when a lawyer does not have fee-paying clients. And, counsel does not dispute that the lodestar method requires the identification of the "market rate," *i.e.*, the rate fee-paying clients pay for similar services in the same geographic area. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989); *Blum v. Stenson*, 465 U.S. at 895, 896 n.11.

Where the parties disagree is in the relevance of prior fee awards to determine the market rate. Claimant's counsel argues that their market rates are the rates they were awarded in the past by other black lung adjudicators. He insists that all he has to do to satisfy his burden of establishing the attorneys' "market rate" is identify past awards. It is not necessary to submit the actual awards. And, according to claimant's counsel, the factfinder is not required to determine whether the underlying awards are themselves based on a market analysis. Bowman argues that this approach is supported by this Court's decisions in *Westmoreland Coal Co. v. Cox*, and *Newport News Shipbldg. and Dry Dock v. Holiday*, 591 F.3d 219 (4th Cir. 2009), and the Sixth Circuit's decision in *B&G Min. Co. v. Director, OWCP* [*Bentley*], 522 F.3d 657 (6th Cir. 2008).

These decisions do not support the approach advocated by Bowman. *Cox* is not a road map for avoiding the fundamental lodestar rules. Prior awards are relevant only if those awards satisfy the market rate test. And counsel seeking to rely on prior awards bears the burden of proving that those awards are based on a market rate analysis. That the Court in *Cox* stated that "Wolfe could have submitted evidence of the fees he has received in the past," was not a license to avoid the lodestar. *Cox*, F.3d at 290. Since *Cox*, the courts have understood that decision in *Cox* enforces

4

rather than avoids an inquiry to the prevailing market.  For example, in explaining the analysis required, one court commented:

> [T]he court must determine the customary fee for similar work in the community. *Id.* "[I]t is the fee applicant's burden to 'produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'" *Id.* (*quoting Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010)) (further quotation omitted). However, courts may generally look first at the rate the fee applicant charges clients. *See Marks Constr. Co. v. Huntington Nat'l Bank*, No. 1:05-cv-73, 2010 U.S. Dist. LEXIS 89186, at *31 ("This determination is 'fact-intensive and best guided by what attorneys earn from paying clients for similar services in similar circumstances.'" (*quoting Rum Creek*, 31 F.3d at 175)).

*Frye v. Metropolitan Life Ins. Co.*, No. 10-0107 (S.D.W.V. Feb. 4, 2011).  Another denied a fee petition based on a lawyer's claim remarkably similar to claimant's counsel's claim here, that his "normal fee in a case of this nature is $250.00 per hour," stating: "The Fourth Circuit has recently explained that a court abuses its discretion in making an award of attorney's fees without establishing a prevailing hourly rate as a guide."  *Equal Employment Opportunity Comm'n v. N. Am. Land Corp.*, No. 08-501 (W.D.N.C. July 7, 2010).  *Cox* confirms that a market analysis is required before relying on prior fee awards.

This Court's decision in *Holiday* does not sanction reliance on prior fee awards in shifted fee litigation without regard to the prevailing market rate.  There, the Court criticized the Board's approach to setting fees with reference to its own past determinations because it "undermines the ability of an attorney to make out a reasonable hourly rate with reference to what other attorneys earn for similar services."  *Holiday*, 591 F.3d at 227.[1]  The Court stated, "lodestar analysis requires far more than consideration of just these factors."  *Id.*

---

[1]    The Court referred to *Newport News Shipbldg. and Dry Dock v. Brown*, 376 F.3d 245 (4th Cir. 2004), also relied on by Bowman.  Response Brief at 19.  In *Brown*, the Court accepted the hourly rate based on prior fee awards.  The decision does not disclose the basis for the prior fee awards, but notes that unlike like this

Finally, *Bentley* offers no support for Bowman's belief that an ALJ has discretion to decline to determine whether past fee awards are based on a market analysis. In *Bentley*, the Sixth Circuit recognized the limited value of prior fee awards. The court commented: "As a general proposition, rates awarded in other cases do not set the prevailing market rate--only the market can do that.... Reliance on awards in earlier cases might not be warranted in all instances." *Bentley*, 522 F.3d at 664. Here, reliance on past fee awards is not warranted because there is no proof that the past fee awards were based on a market analysis.

What is remarkable about this case is that the attorney here did not make even a cursory effort to do what the Supreme Court requires. There are lawyers with fee-paying clients who practice in the approximate geographic area where these lawyers practice. Yet, the lawyers here have not even once sought any information about what these lawyers with fee-paying clients charge for their time. Thus, as is the case here, the decision maker has no information on which to base an award and, as is the case here, no apparent interest in ascertaining the prevailing market rates. There is no reason to deny a timely request for discovery other than a judgment that the true market rate is irrelevant or that the law that applies to everyone else does not apply in black lung cases. There is no precedent that supports the ALJ's or the Benefits Review Board's approach, only a vast body of contrary authority from the Supreme Court. *See also* 9 U.S.C. § 10 (identifying refusal to consider evidence pertinent and material to a controversy as a ground to vacate an arbitration award).

Bowman, however, contends that *Bentley* recognizes an exception for litigation where only a small number of attorneys are willing to take black lung

---

case, the employer in *Brown* did not dispute the rates claimed or offer counter-evidence to show that the rate was not reasonable for the relevant community. *Brown*, 376 F.3d at 251.

claims. Response Brief at 20. There are three problems with this argument. First, a "few lawyers" exception is nowhere to be found in *Bentley*. Second, such an exception overlooks why fees are shifted. Congress permits fees to be shifted in order to encourage plaintiffs or attorneys to bring specific types of litigation. This "encouragement" approach rests on the notion that many lawsuits are attorney-generated rather than client-generated so it allows an attorney to recover lost opportunity costs--the money he or she could have made had the attorney taken a fee-paying case. *See* Breger, Compensation Formulas for Court Awarded Attorney Fees, 47 LAW AND CONTEMPORARY PROBLEMS 249, 251 (1984). The statute therefore already accommodates the concern that few attorneys will take this type of litigation. Third, the underlying premise--that there are few attorneys who take this cases--is not established in the record before the ALJ or proved anywhere else. The GAO report cited by Bowman is not proof. It is the same type of anecdotal comments concerning the availability claimants' attorneys that the Supreme Court rejected in *Department of Labor v. Triplett*, 494 U.S. 715, 723 (1990) ("This will not do. … [T]his sort of anecdotal evidence will not overcome the presumption of regularity and constitutionality to which a program established by Congress is entitled.").

Bowman has abandoned reliance on several other cases relied on in *Eastern Associated Coal Corp. v. Gosnell*, Nos. 11-2038(L) and 11-2308 (4th Cir. docketed Sept. 26, 2011), namely, *A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 82 (2d Cir. 2005), *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988), and *Velazquez v. Director, OWCP*, 844 F.2d 738 (10th Cir. 1988). Instead, he relies on several decisions from the Seventh Circuit. Response Brief at 20-22, citing *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307 (7th Cir. 1996), *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999), *Peabody Coal Co. v. Estate of Goodloe*, 299 F.3d 666 (7th Cir. 2002), *Amax Coal Co. v. Director, OWCP* [*Chubb*], 312 F.3d 882 (7th Cir. 2002),

and *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403 (9th Cir. 1990). In none of those cases did the courts permit reliance on a number essentially plucked from a hat. *See Peabody Coal Co. v. McCandless*, 255 F.3d 465 (7th Cir. 2001). In *People Who Care*, the lawyer identified the rate that fee-paying clients paid him in the past as well as the rates that fee-paying clients paid his colleagues, but he did not have fee-paying clients in each of the years he performed work on the case at issue. The Seventh Circuit held that the district court erred in rejecting this proof. In *Spegon*, the Seventh Circuit held that the district court did not abuse its discretion in declining to rely on past fee awards to award the rate plaintiff's counsel sought. It stated: "The gist of Spegon's argument is that having recently been awarded the requested rates by another district court, the district court in the instant case should have been compelled to award the same rates and its failure to do so constituted a per se abuse of discretion. We disagree." *Spegon*, 175 F.3d at 557.

Bowman's reliance on *Goodloe*, *Chubb*, and *Phelps Dodge* also is misplaced. In each of these cases, the court affirmed the award of an hourly rate based on counsel's affidavits attesting to their customary rate and the rate awarded in other black lung adjudications. In each case, the court found the affidavits uncontradicted and in the absence of any evidence submitted by the employers to support their objection to the requested rate, the courts declined to disturb the rates awarded. *Goodloe*, 299 F.3d at 672, *Chubb*, 312 F.3d at 894-95, *Phelps Dodge*, 896 F.2d at 407. If these cases support anything, they show that the ALJ erred in refusing to permit the discovery Bowman Coal sought. Bowman, however, defends the ALJ's refusal to permit discovery on the theory that Bowman did not seek leave to file discovery or move to reopen the record or that the Board did not contemplate discovery on the question of attorney's fees. Response Brief at 25. In a program that is not to be bound by technical rules of procedure, 33 U.S.C. §

8

923(a), *incorporated by reference into* 30 U.S.C. § 932(a), the first two excuses lack any support. The third excuse cannot be reconciled with well-established notions of due process and fundamental fairness. It is error to refuse to permit an employer an opportunity to respond to a claimant's proof, no matter what the issue, and then rely on the lack of evidence in the record as a reason to find in claimant's favor. *See North Am. Coal Co. v. Miller*, 870 F.2d 948 (3d Cir. 1989); *Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799 (4th Cir. 1998).

As a fallback, Bowman suggests that the ALJ did not limit her analysis solely to evidence of prior awards, but considered the factors at 20 C.F.R. § 725.366(b). Response Brief at 19, citing App. 18-21. By the ALJ's own admission, she only "summarily addressed" those factors--*i.e.*, "the nature of the issues involved, the complexity of this case, the degree of skill with which the claimant was represented, the amount of time and work involved and other relevant factors." J.A. 18 (ALJ slip op. at 4 n.2). In any event, these factors are intended to embody the lodestar determination. Both the Sixth Circuit and the D.C. Circuit determined that section 725.366 does not replace the lodestar. *Bentley*, 522 F.3d at 662-63; *National Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 875 (D.C. Cir. 2002) (responding to a challenge to the regulation to the extent that it did not follow the lodestar).

In the end, Bowman has no response to the Supreme Court's instruction that reliance on awards in prior cases is not warranted when those awards are based on prior contingent fee awards. As the Court commented: "Our decrees would follow the 'market,' which in turn is based on our decrees." *City of Burlington v. Dague*, 505 U.S. at 564. *Dague* is controlling here. Bowman admits that the ALJ incorporated risk of loss into her calculation of the hourly rate. Response at 23. Bowman does not and cannot dispute that the Supreme Court has prohibited reliance on risk of loss. *Id.* at 565. *See also Cox*, 602 F.3d at 290 n.12, citing *Bentley*, 522 F.3d at 666. In this case, none of the prior awards satisfies the market rate test. None

are based on a market rate. The record in this case is devoid of market rate data. The hourly rates requested here are far in excess of the market rates for the area in which this fee applicant practices and under all precedent, this requires that the fee awards here must be vacated and the issue remanded for a proper market rate analysis.

B.    It Is Error to Compensate Anyone for Fifteen Minutes
       When the Work Performed Did Not Take Fifteen Minutes

Bowman argues that the ALJ did not abuse her discretion in approving counsel's use of quarter-hour billing for routine tasks. He does not claim that the fifteen minutes the lawyers charged are accurate reflections of how much time they actually spent performing the tasks identified. He claims instead the Board's regulations provide that quarter-hour increments may be used. He argues that the courts have not "rejected" the practice, but rather permit the number of hours to be reduced where counsel bills in quarter-hour increments. Finally, he claims that "Federal black lung litigation is typically lengthy and fraught with delays" so a lot of hours are required. Response at 29.

None of this justifies overbilling for routine tasks especially where, as here, counsel touts his expertise to justify a premium hourly rate. That experience is supposed to result in greater efficiency. Billing by the quarter-hour does not promote efficiency. Nor does the type of case necessarily dictate the outcome. A prevailing party is not entitled to fees that a paying client would not tolerate whether it is a civil rights case or a Longshore case or a black lung case. The courts, including this one, have denounced the practice of billing by the quarter-hour because it results in excessive hours. *See* Petitioners' Opening Brief 21-22 (citing cases). And the courts of appeals have rejected paying "partners' rates" for associate or clerical work. *See Bogan v. City of Boston*, 489 F.3d 417, 429 (1st Cir. 2007); *Missouri v. Jenkins*, 491 U.S. at 288 n.10. Neither the Board nor the ALJ was free to disregard these cases.

*See Ingalls Shipbldg, Inc. v. Director, OWCP* [*Fairley*], No. 89-4459 (5th Cir. July 25, 1990) (unpub.); *Ingalls Shipbldg, Inc. v. Director, OWCP* [*Biggs*], No. 95-40066, 46 F.3d 66 (5th Cir. Jan. 12, 1995) (unpub.) (holding: "We agree that fee determination is within the discretion of the ALJ and the BRB, but the exercise of that discretion cannot contravene circuit precedent.").[2]

Bowman claims that Bowman Coal did not demonstrate that the fees in this case were excessive. That claim ignores Bowman Coal's argument. Petitioners' Brief at 24. Bowman does not claim that when counsel charged a quarter-hour, he actually spent a quarter-hour on the task. That, by definition, results in excessive fees. A simple calculation proves the point. Most documents are routine notices that an experienced practitioner has seen many times and that require no response. They can be reviewed and filed in no more than two minutes. If a file contains twenty-nine such documents and each is billed at $75 (one-quarter of $300), that amounts to $2,175 in fees (an effective hourly rate of $2,250), rather than the $300 he should have received for the actual time it took to review the correspondence (one hour at $300/hour).

Bowman offers no reason why this Court should depart from the majority rule and does not answer the allegation that the process resulted in excessive billings other than to dismiss it a "fragile" or "sparse." He simply claims that the ALJ did not abuse his discretion in allowing it. When charging by the hour, the practice of charging more time than it takes to perform a service is invalid as a matter of law and the DOL adjudicators have no discretion to violate the law.

---

[2]     According to Fifth Circuit Rule 47.5.3, unpublished opinions issued before January 1, 1996, are precedent. *See Conoco, Inc. v. Director, OWCP*, 194 F.3d 684, 689 (5th Cir. 1999).

## III.  CONCLUSION

For the reasons set forth above, the decision and order of the Benefits Review Board approving the award of attorney's fees should be vacated and the matter remanded to the agency for a decision that awards only reasonable hours at a market rate.

Respectfully submitted,

s/Laura Metcoff Klaus
Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2362

## CERTIFICATE OF COMPLIANCE

**Word count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 3,922 words (exclusive of the cover, table of contents and table of authorities). I relied on my word processor to obtain the count and it is Microsoft Word 2003.

**TypeFace**

In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times Roman, 14 pt.


s/Laura Metcoff Klaus
Laura Metcoff Klaus

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2012, copies of the foregoing Petitioner's Reply Brief were served on the following parties electronically through the CM/ECF notification system:

Gary Stearman, Esq.
Sarah H. Hurley, Esq.
Office of the Solicitor
U.S. Department of Labor
Suite N-2117
200 Constitution Avenue, N.W.
Washington, D.C.  20210
blls-sol@dol.gov

Joseph Wolfe., Esq.
Ryan Gilligan, Esq.
Wolfe, Williams & Rutherford
P. O. Box 625
Norton, Virginia  24273-0625
jwolfe@wwrrlawfirm.com; rgilligan@wwrrlawfirm.com

s/Laura Metcoff Klaus
Laura Metcoff Klaus